UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  v.<br><br>REAL PROPERTY AND IMPROVEMENTS LOCATED AT 2366 SAN PABLO AVENUE, BERKELEY, CALIFORNIA,<br><br>  Defendant. | Case No. 13-cv-02027-JST<br><br>**ORDER GRANTING MOTIONS TO STRIKE**<br><br>Re: ECF Nos. 77, 94 |

In this civil forfeiture action filed by the United States against real property at which a medical cannabis dispensary allegedly operates, the United States has filed motions to strike the claims of the dispensary's patients and the City of Berkeley, where the dispensary is located, for lack of Article III standing. The Court will grant both motions.

**I.  BACKGROUND**

The Government filed its complaint for forfeiture on May 2, 2013, asserting a claim for *in rem* forfeiture of the Real Property and Improvements Located at 2366 San Pablo Avenue, Berkeley, California ("the Property") pursuant to 21 U.S.C. § 881(a)(7). ECF No. 1. The Government alleges that the Property is the business address of Berkeley Patients Group ("BPG"), a medicinal marijuana dispensary. Id. ¶ 6. The owner of record is alleged to be Nahla Droubi. Id. ¶ 7. The Government alleges that BPG operates in violation of 21 U.S.C. § 841(a), which prohibits the knowing or intentional manufacture or distribution, or possession with the intent to manufacture, distribute, or dispense, marijuana.

On July 5 and 6, 2013, several customers of BPG and patients who use marijuana as treatment pursuant to a physician's recommendation filed verified claims to the Property, each asserting an "ownership interest" in the Property: Gwendolyn McCalope, ECF No. 17; Cindy

1  Smith, ECF No. 18; Etienne Fontan, ECF No. 19; Jeffrey Bishop, ECF No. 20; Robin Bishop,
2  ECF No. 21; and Mary Davis, ECF No. 27 (collectively, the "Member Claimants"). Mr. Fontan
3  also alleges that he has an "ownership interest" in the property because he is an
4  "employee/director of BPG and will be deprived of his livelihood should the property be
5  forfeited." ECF No. 19 ¶ 2.

6  Also on July 5, 2013, the City of Berkeley, in which the Property is located, filed a verified
7  claim on its own behalf. ECF No. 16. The City states that it issues permits to medical cannabis
8  dispensaries, including BPG, in compliance with California law. According to the City, it has
9  dedicated "significant financial and human resources" to the effort to regulate medical cannabis
10 dispensaries. Id. at 1. The City states that the Property "is vital to the safe and affordable
11 distribution of medical cannabis to patients suffering from chronic and acute pain, life threatening
12 and severe illnesses, diseases, and injuries within the City of Berkeley, and to the City of
13 Berkeley's ability to control and regulate medical cannabis within its community." Id. The City
14 alleges that it would suffer economic injury, should the Government prevail, "due to the
15 substantial loss of tax revenue paid by" BPG, and generalized injury to its "comprehensive plan to
16 regulate and control medical cannabis dispensaries, which was implemented to positively impact
17 the health, safety and well-being of all City of Berkeley residents." Id. at 2. Per the City, the
18 closure of BPG "will likely lead to an increased number of unregulated, unpermitted dispensaries
19 and an increased number of illicit marijuana sales on Berkeley streets negatively impacting
20 Berkeley neighborhoods and the business community. Consequently, Claimant's ability to
21 regulate business, people, and property within its jurisdiction is also threatened by the potential
22 forfeiture, as is Claimant's ability to regulate local zoning." Id.

23 **II.    LEGAL STANDARD**

24 21 U.S.C. § 881(a)(7) subjects real property "used, or intended to be used, in any manner
25 or part, to commit, or to facilitate the commission of" certain crimes, including those alleged here,
26 to forfeiture. Supplemental Rule for Admiralty of Maritime Claims and Asset Forfeiture Actions
27 G(5) governs the filing of claims in such real property. Supplemental Rule G(5)(a)(i)(B) requires
28 the claimant to "state the claimant's interest in the property." Supplemental Rule G(8)(c) permits

the Government to move to strike a claim or answer for failure to comply with the rules, or "(B) because the claimant lacks standing." The motion "may be presented as a motion for judgment on the pleadings or as a motion to determine after a hearing or by summary judgment whether the claimant can carry the burden of establishing standing by a preponderance of the evidence." Suppl. Rule G(8)(c)(ii)(B).

Separately, in order to satisfy the case-or-controversy requirement of Article III, "a plaintiff (including a civil forfeiture claimant) must establish the three elements of standing, namely, that the plaintiff suffered an injury in fact, that there is a causal connection between the injury and the conduct complained of, and that it is likely the injury will be redressed by a favorable decision." United States v. $133,420.00 in U.S. Currency, 672 F.3d 629, 637 (9th Cir. 2012) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992)).

### III. ANALYSIS

The Government moves to strike the claims filed by the Member Claimants and the City of Berkeley because each of them lacks standing to file a claim in this case.

"Claimants in civil forfeiture actions can satisfy [the standing] test by showing that they have 'a colorable interest in the property,' which includes an ownership interest or a possessory interest." Id. (quoting United States v. Real Prop. Located at 5208 Los Franciscos Way, Los Angeles, Cal., 385 F.3d 1187, 1191 (9th Cir. 2004)). A "colorable interest" in property subject to forfeiture may be established "by showing actual possession, control, title, or financial stake." 5208 Los Franciscos Way, 385 F.3d at 1191. Whether a claimant has an "ownership interest" is determined by reference to the law of the state where the property is located. Id. For example, a claimant who obtains property subject to forfeiture in violation of California's Uniform Fraudulent Transfers Act does not have standing to challenge the forfeiture. Id. at 1192–93.

In response to special interrogatories propounded by the Government pursuant to Supplemental Rule G(6), each of the Member Claimants and the City of Berkeley responded that they do not contend they have an "ownership" interest in the Property. See ECF No. 77, Exs. 4–8; ECF No. 94-1. And in response to the instant motions, they concede that they lack any ownership interest in the property. Instead, the Member Claimants and the City of Berkeley argue that *any*

3

1  interest in the real property is sufficient to file a claim, and that their interests are therefore
2  sufficient.[1]

### A.  Member Claimants

As an initial matter, the Member Claimants' reliance on United States v. $191,910.00 in U.S. Currency, 16 F.3d 1051, 1057 (9th Cir. 1994), superseded by statute on another ground as stated in United States v. $80,180.00, 303 F.3d 1182, 1184 (9th Cir. 2002), is inapposite. In that case, the Ninth Circuit stated the test as follows: "[i]n order to contest a forfeiture, a claimant need only have some type of *property interest* in the forfeited items. This interest need not be an ownership interest; it can be any type of interest, including a possessory interest." Id. (emphasis added)). Common among every invocation of the test, including the one in $191,910.00 in U.S. Currency, is a focus on a "property interest."[2] Although "any type of interest" may suffice, it must be a "property interest." Thus, because the claimant in that case alleged "that some of the money belonged to him and that the rest belonged to a client in San Diego," the claimant had satisfied Article III's standing requirement. Id.

The Member Claimants argue that under California law, they have a "beneficial interest" in the Property by virtue of their membership in BPG. None of the California authorities relied upon by the Member Claimants, however, support that position. Neither the California Compassionate Use Act, Health & Safety Code § 11362.5, nor the Medical Marijuana Program, § 11362.7, relate to "ownership," "possessory interests," or "property interests." That the Member Claimants benefit from these laws of general welfare through BPG is not sufficient to satisfy the standing test

---

[1] The parties have no disputes of fact concerning the claims filed by the Member Claimants and the City. All parties agree that the instant motions present a question of law.

[2] The civil forfeiture statute itself also provides a definition of "owner" for purposes of the innocent owner defense. Although the definition is not directly applicable, it sheds some light on the contours of the claim procedure in civil forfeiture cases. The definition includes "a person with an ownership interest in the specific property sought to be forfeited, including a leasehold, lien, mortgage, recorded security interest, or valid assignment of an ownership interest," and "does not include" those with a "general unsecure interest in, or claim against, the property or estate of another," nor does it include "a nominee who exercises no dominion or control over the property." 18 U.S.C. § 983(d)(6)(B).

4

in a civil forfeiture case. The Member Claimants do not cite to any case in which a claimant was permitted to file a claim based on a non-property interest, and the Court has not located any.[3]

The closest case on its facts is United States v. Real Prop. Located at 3600 N. Old State Ave., Harrison, Mich., No. 06-15770-BC, 2008 WL 597879, at *1 (E.D. Mich. Mar. 4, 2008). In that case, the Government sought the forfeiture of certain real property of the Fly-In-Wheels Motorcycle Club, and the secretary of the club filed a claim. The court found that, "[a]t best," the claimant was an unsecured creditor, which was insufficient to establish standing. The Member Claimants are in no better position than the plaintiff in that case.

### B. City of Berkeley

The City of Berkeley also argues that its non-possessory interests in the property suffice to file a claim. In particular, the City argues that its interest in tax revenues from the operation of BPG is sufficient to establish standing. But the City's authorities, like those cited by the Member Claimants, all involve possessory interests, or seizures of property from claimants that incurred liability to the true owner of the property. See, e.g., Via Mat Int'l S. Am. Ltd. v. United States, 446 F.3d 1258, 1263 (11th Cir. 2006) (claimant transporter and insurer of bank notes seized from the claimant at customs had standing to file claim); United States v. Premises Known as 7725 Unity Ave. N., Brooklyn Park, Minn., 294 F.3d 954, 957 (8th Cir. 2002) (mortgagee and junior lienholder had standing to file claim); United States v. 5 S 351 Tuthill Rd., Naperville, Ill., 233 F.3d 1017, 1022 (7th Cir. 2000) (claimant satisfied "undemanding" Article III test (which was contrasted from Ninth Circuit's more demanding "dominion and control" test) because claimant was beneficiary of land trust entitled to receive proceeds of sale of land); United States v. Cambio Exacto, S.A., 166 F.3d 522, 527 (2d Cir. 1999) (money transmitters had standing to file claims against forfeiture of funds in their accounts, held for their customers pursuant to state law). The City does not have any interest akin to those found to be sufficient in the above-cited cases.

---

[3] The Member Claimants' argument that California standing law recognizes a form of "beneficial interest" taxpayer standing does not assist them because California standing law does not assist the Court in resolving the question of Article III standing.

The Court acknowledges that the City may have a financial stake in the outcome of this case in the form of potential future tax revenues from BPG, but that is not the same as a property interest in the real property. Indeed, even if the owner of the Property were to prevail in this case, that is no guarantee that BPG will continue to operate, or that it will continue to operate in Berkeley. The City's interest, therefore, is not in the property itself, but in the business that currently operates there. The tax revenues from BPG do not confer standing on the City to challenge the forfeiture of the real property that BPG happens to lease in order to operate its business.

Unlike the cases relied upon by the City, including Cambio Exacto and 5 S 351 Tuthill Rd., here, the City does not allege that the forfeiture of the property itself will result in "substantial economic harm." Instead, it is the closure of BPG that the City opposes, which is irrelevant to the standing question. The City's position would confer standing on every tax-collecting entity in every forfeiture of real property; the Court is not aware of, and no party has cited,[4] any authority in support of such a sweeping holding.[5] While the Court acknowledges that the City may suffer significant injury as a consequence of forfeiture, the City has not alleged an injury of the type recognized in the law as sufficient to confer standing in this civil forfeiture action.

---

[4] The United States relies upon the decision in City of Oakland v. Holder, 901 F. Supp. 2d 1188, 1191 (N.D. Cal. 2013) for support. In that case, the City of Oakland filed a declaratory judgment action seeking to enjoin the civil forfeiture of a marijuana dispensary in Oakland under the Administrative Procedure Act (APA). Because an APA action could be sustained only if "no other adequate remedy" was available, the City argued, and the Government agreed, that it did not have standing to file a claim in the underlying forfeiture action because the City did not have an ownership interest in the property; it only had an interest in tax proceeds from the dispensary. Thus, the court in that case was never called upon to decide whether, as a matter of law, the City of Oakland did or did not have standing to file a claim; the parties did not dispute that point. See id. at 1193. The court's assumption that the City of Oakland's interests were "too far removed from the defendant property to give it standing" in that case is therefore dicta.

[5] The City's other asserted interests in maintaining its regulatory authority over the real property and in effectuating California medical cannabis policy are similarly unrelated to the property at issue. Instead, the City appears to be arguing that the federal government has usurped its ability to regulate medical cannabis dispensaries in its jurisdiction. Without minimizing the importance of that dispute to the City, the Court finds that the question the City raises is not relevant here, where the only issue before the Court is whether, in this civil forfeiture action, the City has standing to file a claim for the real property at issue.

## IV. CONCLUSION

Neither the Member Claimants nor the City can establish standing to pursue their claims in this civil forfeiture action because the injuries they assert are not recognized as injuries sufficient to file a claim. Consequently, the Court hereby GRANTS the Government's motion to strike the claims filed by the City of Berkeley and Claimants Gwendolyn McCalope, Cindy Smith, Etienne Fontan, Jeffrey Bishop, Robin Bishop, and Mary Davis.

**IT IS SO ORDERED.**

Dated: June 23, 2014



JON S. TIGAR
United States District Judge