UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>REAL PROPERTY AND IMPROVEMENTS LOCATED AT 2366 SAN PABLO AVENUE, BERKELEY, CALIFORNIA,<br><br>    Defendant. | Case No.  13-cv-02027-JST<br><br>**ORDER GRANTING MOTION TO STAY ACTION PENDING APPEAL**<br><br>Re: ECF No. 163 |

Before the Court is the City of Berkeley's Motion to Stay this Action Pending Appeal. ECF No. 163.  For the reasons set forth below, the Court will grant the Motion.

**I.      BACKGROUND**

The United States instituted this action in May 2013, seeking to forfeit property located at 2366 San Pablo Avenue in Berkeley, California due to the property's use as the site of a medical marijuana dispensary. ECF No. 1.  Among others, Claimants Nahla Droubi, the owner of the property, Berkeley Patients Group, the lessee of the property and operator of the dispensary, and the City of Berkeley ("City" or "Berkeley") challenged the forfeiture.  See ECF Nos. 1, 12, 16.

On March 21, 2014, the United States filed a motion to strike Berkeley's claim, contending that the City lacked Article III standing to participate in this action because its interest in the property was insufficient for standing purposes.  ECF No. at 94.  Berkeley asserted that its interests in tax revenues generated by the dispensary and its ability to regulate dispensaries within its jurisdiction are sufficient to confer on the City Article III standing.  ECF No. 95 at 12-16. Ultimately, the Court granted the United States' motion, and struck Berkeley from this action.  See ECF No. 130.

Berkeley then sought a separate judgment from this Court, which would allow the City to

1  appeal the issue of standing to the Ninth Circuit Court of Appeals.  See ECF No. 137.  The Court

2  granted Berkeley's motion and entered final judgment against the City.  ECF No. 153.  The City

3  then filed an appeal at the Ninth Circuit, and simultaneously filed its motion to stay these

4  proceedings pending resolution of its appeal.  See ECF Nos. 161, 163.

## II.   LEGAL STANDARD

A court's "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  Landis v. N. Am. Co., 299 U.S. 248, 254 (1936).  A stay is "an exercise of judicial discretion, and the propriety of its issue is dependent upon the circumstances of the particular case.  The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion."  Nken v. Holder, 556 U.S. 418, 433-34 (2009) (internal alterations, citations, and quotations omitted).

To decide whether a stay pending appeal is warranted, district courts consider four factors: (1) whether the movant has made a strong showing that it is likely to succeed on the merits; (2) whether the movant will be irreparably injured absent a stay; (3) whether a stay will substantially injure other parties to the proceeding; and (4) the public interest implicated by the grant or denial of the stay.  Id. at 434; see also Leiva-Perez v. Holder, 640 F.3d 962, 964 (9th Cir. 2011).

## III.  DISCUSSION

### A.   Likelihood of Success on the Merits

Berkeley argues that courts have interpreted the standard for evaluating the first factor—the likelihood of success on the merits—to mean that a party seeking a stay "must show a 'minimum quantum of likely success necessary to justify a stay,'" such as when the moving party has raised "serious legal questions" on appeal.  ECF No. 163 at 3 (citing Leiva-Perez, 640 F.3d at 967-68).  In particular, says the City, substantial issues of first impression in the Ninth Circuit represent "serious legal questions" for the purposes of deciding whether to stay a case.  Id. at 4-5 (citing Gray v. Golden Gate Nat'l Recreational Area, No. C 08-00722, 2011 WL 6934433, at *2 (N.D. Cal. Dec. 29, 2011); Hunt v. Check Recovery Sys., Inc., Nos. C 05 4993 SBA, C 06 2037 SBA, 2008 WL 2468473, at *3 (N.D. Cal. June 17, 2008); and City of Oakland v. Holder, 961 F.

Supp. 2d 1005, 1012 (N.D. Cal. 2013)).

The United States argues that Berkeley has presented no serious legal question or question of first impression because "the Ninth Circuit has clearly stated that only those with 'an ownership interest or a possessory interest' have standing to file a claim in a forfeiture proceeding." ECF No. 168 at 1-2 (citing United States v. $133,420 in U.S. Currency, 672 F.3d 629, 637-38 (9th Cir. 2012)). Further, the United States believes that this factor weighs against a stay because the City lost before this Court on the merits of the standing issue.

The Court finds that the City has raised a "serious legal question" that satisfies the likelihood-of-success prong of the stay analysis. The issue of Berkeley's standing is a serious legal question of first impression. Gray, 2011 WL 6934433, at *2. Moreover, the issues raised by medical marijuana in local or state jurisdictions that permit its use, and those jurisdictions' standing to assert their interests in medical marijuana regulation, present real, unanswered policy questions that are sufficiently "serious" to warrant consideration by the Ninth Circuit. Cf. City of Oakland, 961 F. Supp. 2d at 1012 (explaining that "Oakland raises novel legal questions about" its standing under the APA to contest the forfeiture of property on which a medical marijuana dispensary is located).[1]

The United States' argument that the Ninth Circuit has already answered the standing question in these circumstances also fails. The Ninth Circuit has explained that an ownership or possessory interest in property is sufficient for standing purposes, but has not foreclosed the possibility that a city, like Berkeley here, has standing to contest a forfeiture based on its interests in tax revenue and regulating medical marijuana in its jurisdiction. See $133,420 in U.S. Currency, 672 F.3d at 637-38 (explaining that "a colorable interest in the property" subject to forfeiture "*includes* an ownership or a possessory interest") (emphasis added).

This factor weighs in favor of a stay.

---

[1] Contrary to the United States' assertion, the fact that the City lost its standing claim on the merits does not preclude the Court from finding a "minimum quantum of likely success." Were courts to use the Government's metric to determine whether to grant a stay pending appeal, no stay would ever be granted, because only litigants who lose seek to appeal.

3

### B. Irreparable Injury to the Moving Party

Berkeley argues that it will be irreparably harmed if the Court does not grant a stay because its claim will be mooted if this forfeiture action is resolved before the City's appeal is. ECF No. 163 at 5. The purpose of the City's claim is to protect its interests and those of its residents: interests in the tax revenue generated by the dispensary, which the City uses to fund its public programs, and in stemming the illegal trade in marijuana by providing a legal, regulated source of the drug. Id. at 5-7. Further prosecution of the case without the City's ability to assert its claim may lead to the closure of the dispensary, thereby mooting the City's claim. Berkeley also contends that it will be irreparably harmed if the Court does not grant a stay because, even if Berkeley's interests are not mooted by the resolution of this case during the pendency of Berkeley's appeal, Berkeley will be unable to shape the district court record, which "will impact Berkeley's ability to prevail on its substantive defenses" to forfeiture. Id. at 7.

The United States responds that the City will not be irreparably harmed if the forfeiture action proceeds because the City has provided no documentation or other admissible evidence to support its claim that it will lose tax revenue if the dispensary closes. ECF No. 168 at 2. Further, the Government argues that Berkeley will not be irreparably harmed because Berkeley Patients Group provided tax revenue to the City via its delivery sales business before it opened at 2366 San Pablo Avenue (although the Government's evidence shows that the delivery-sales revenue was substantially lower than the brick-and-mortar operation's). Id. at 2-3 & Ex. 1. Finally, the United States argues that, because most of customers of the City's medical marijuana dispensaries come from outside the City, those customers could decide "to purchase their marijuana elsewhere, or decide to cultivate their own." Id. at 3 & Exs. 2-3. Thus, says the United States, Berkeley "has provided no evidence to show definite correlation between the tax revenue from illegal marijuana sales at the defendant real property and the instant forfeit action." Id.

The City has the better argument regarding the potential irreparable harm it faces in the absence of a stay. First, the risk of mootness by itself is sufficient to show irreparable harm. See City of Oakland, 961 F. Supp. 2d at 1013-14; In re Klein Sleep Prods., Inc., No. 93 CIV.7599 (CSH), 1994 WL 652459, at *1 (S.D.N.Y. Nov. 18, 1994). So if this action were to proceed to

4

conclusion before the City had the opportunity to return to the case, and if its appeal is successful, then Berkeley would suffer irreparable harm. The United States has not attempted to rebut this argument.

Second, if this action does not proceed to conclusion before the City re-enters the case, assuming its appeal is successful, Berkeley will suffer the harm of being unable to contribute to, or develop and shape the record. The United States has not rebutted this argument.

The only argument the United States presents in rebuttal is that the United States refutes that Berkeley will suffer reduced tax revenue if the property is forfeited while its appeal is pending. But the United States' argument on this point only goes to the degree to which Berkeley will suffer harm—i.e., that Berkeley has only shown that it will lose *some*, rather than *all*, tax revenue from Berkeley Patients Group's medical marijuana sales if the brick-and-mortar location is forfeited. There is no question that Berkeley will suffer at least some harm as a result of reduced tax revenue if a stay is not granted.[2]

The Court finds that this factor weighs in favor of granting a stay.

### C.   Substantial Injury to Other Parties

The United States contends that it will suffer harm if the Court stays this case because it will be unable to enforce its laws for an indefinite period of time during the stay. ECF No. 168 at 4. The City counters that the United States will not be harmed by a stay because (1) the dispensary has been openly operating since 2000, so the United States "cannot credibly complain about preserving the status quo pending Berkeley's appeal," (2) the court in City of Oakland saw no "appreciable harm to the Government" by virtue of a stay, and (3) the other Claimants in the action would benefit, rather than be harmed, by a stay because if the City succeeds on appeal, the Claimants will have "an additional party [to] raise its challenges to the Government's action." ECF No. 163 at 7-8 (citing City of Oakland, 961 F. Supp. 2d at 1014-15).

---

[2] As to the United States' argument that dispensary clients will find other sources for medical marijuana or cultivate their own if Berkeley Patients Group is unable to operate at the subject property, the Court is not sure how this factors into the irreparable harm analysis, other than to show that closing Berkeley Patients Group's current operations may result in that business losing customers, which would also tend to show that Berkeley will suffer reduced tax revenue if Berkeley Patients Group no longer operates at 2366 San Pablo Avenue.

The court in City of Oakland considered the Government's precise argument and reached this conclusion:

> While the Court understands—indeed, shares—the Government's concern about ensuring that the *1840 Embarcadero* action advances in a timely manner, the Court does not see any appreciable harm to the Government if the forfeiture proceeding is stayed during Oakland's appeal. There is no risk that the defendant property will be lost or damaged or that evidence relevant to the forfeiture proceeding will become stale during a temporary stay of the action. The Court also appreciates the Government's concern over protecting its ability to enforce federal law. While a stay may temporarily suspend the forfeiture proceeding against the defendant property, the Government has put the claimants in the *1840 Embarcadero* action—as well as any other individuals with connections to property used for similar medicinal cannabis dispensary operations—on notice of its intention to utilize the civil forfeiture process to compel compliance with federal drug laws.

City of Oakland, 961 F. Supp. 2d at 1014. Thus, the City of Oakland court reasoned, a stay would not work any substantial injury to the United States' interests. Id. at 1015. This court reaches the same conclusion.

The lack of substantial injury to any party weighs in favor of a stay.

### D. The Public Interest

The City cites, in support of a stay, the public interests in: (1) the health and safety of Berkeley residents, as reflected in its medical marijuana regulations, (2) the adjudication of a novel and topical legal issue regarding a locality's standing in forfeiture proceedings, and (3) promoting judicial economy, and avoiding re-litigation and the risk of inconsistent rulings. ECF Nos. 163 at 8, 170 at 5-6.

The United States argues that Berkeley's first asserted interest is merely a re-framing of its asserted policy interest in its medical marijuana laws, and that because Congress has specifically rejected the notion that any public interest exists in medical marijuana, Berkeley may not assert this as a cognizable public interest. ECF No. 168 at 3-4 (citing Golden Gate, 512 F.3d at 1127). Moreover, the United States argues that a strong public interest, which is reflected in the federal Controlled Substances Act, weighs against permitting a stay here. Id. (citing Golden Gate, 512 F.3d at 1127).

6

The United States is correct that this Court is bound by federal precedent and by the word of Congress to recognize the public interest in enforcing congressional drug policy. See United States v. Oakland Cannabis Buyers' Co-op, 532 U.S. 483, 495-98 (2001) (explaining that, when a district court considers whether to issue an injunction, it cannot evaluate whether enforcement of congressional drug policy is in the public interest; the question is whether that policy should be enforced by injunction or in some other fashion, not whether enforcement is appropriate at all). And it is true that the public interest in enforcement of forfeiture laws will be impeded if the Court grants a stay, although only as to this property and for a limited time. City of Oakland, 961 F. Supp. 2d at 1014. But the Golden Gate court also made clear that district courts should recognize the public interest reflected in a properly enacted local ordinance. 512 F.3d at 1127 ("We are not sure on what basis a court could conclude that the public interest is not served by an ordinance adopted in such a fashion."). And federal courts also act in the public interest when they "exercise their discretionary power with proper regard for the rightful independence of state governments in carrying out their domestic policy." Id. (citing Burford v. Sun Oil Co., 319 U.S. 315, 318 (1943)). Thus, federalism interests tend to counterbalance the Court's statement in Oakland Cannabis.[3]

The Court also finds that there is some public interest in resolving the novel legal issue of whether a city has standing in these circumstances, and if so, what a city's role might be in a forfeiture action. The fact that multiple states and localities have enacted medical marijuana laws suggests the existence of this public interest. Cf. City of Oakland, 961 F. Supp. 2d at 1015 (finding a "significant public interest" in "the novel legal issue regarding whether a municipality has standing under the APA to challenge a civil forfeiture action against a property when the action may affect its [medical marijuana] regulatory scheme and its residents.").

The City has also identified a cognizable public interest in promoting judicial economy, and avoiding duplicative litigation and inconsistent rulings by granting a stay. City of Oakland, 961 F. Supp. 2d at 1015. If Berkeley succeeds on appeal and this forfeiture action has not been

---

[3] The Court acknowledges, but does not resolve, the question of which public policy interest—federal versus state or local—should be given more weight in this analysis. The combined force of the other factors in the stay analysis makes it unnecessary to resolve this question.

7

resolved at the time of its success, the Court might have to extend deadlines or order duplicative discovery, and the parties could also find themselves confronted with duplicative litigation tasks. If Berkeley succeeds on appeal and this forfeiture action is complete at that time, Berkeley could face the inconsistency of having succeeded on appeal only to find that it cannot vindicate its interest in the property.

Thus, the Court finds that this factor weighs in favor of a stay.

## CONCLUSION

All four factors counsel in favor of a stay. Berkeley's Motion to Stay is granted.

The Court hereby stays this case. The Court further orders that, every ninety days from the date of this order, Berkeley shall file a status report apprising the Court of any additional deadlines or hearing dates set by the Ninth Circuit in its appeal. Berkeley shall also notify the Court that the stay should be lifted by filing a final status report within seven days of the issuance of the Ninth Circuit's decision on appeal.

IT IS SO ORDERED.

Dated: February 6, 2015

JON S. TIGAR
United States District Judge